**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OLUBUKUNOLA ALAO, *Plaintiff*, v. DISTRICT OF COLUMBIA, *Defendant*. | Civil Action No. 24-784 (TJK) |

**MEMORANDUM OPINION & ORDER**

Olubukunola Alao joined the District of Columbia Department of Health in 1998 and worked there for nearly twenty years. Eventually, Dr. Sharon Lewis began supervising her work. Around 2010, however, Dr. Lewis allegedly started discriminating against Alao because of Alao's disability, race, and national origin. And things supposedly became worse when Alao reported this treatment. She says that she endured retaliation and continued discrimination, including a transfer to a new team that exacerbated her medical conditions, all of which led her to file a charge of discrimination in 2014 with the Equal Employment Opportunity Commission and District of Columbia Office of Human Rights. After losing her job in 2016—also for allegedly discriminatory and retaliatory reasons—Alao filed another discrimination charge, this one focused on her termination.

Proceeding pro se, in March 2024, Alao sued several District agencies under Title VII and the Americans with Disabilities Act. The District of Columbia, inserting itself as the proper defendant, moves to dismiss some of her claims. Because Alao failed to exhaust (for one reason or another) her remedies for some discrete acts of discrimination and retaliation, those acts cannot anchor her claims. But she has plausibly alleged retaliation under both Title VII and the ADA, as

well as discrimination under the latter statute. Her Title VII discrimination claims, however, fail because she has not alleged facts supporting an inference of discrimination based on race or national origin. So the Court will grant in part and deny in part the motion to dismiss.

## I.    Background

At the motion-to-dismiss stage and because Alao proceeds pro se, the Court draws the well-pleaded facts from her amended complaint and considers that "complaint 'in light of'" her response (and her "supplemental memorandum"). *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *see also* ECF Nos. 14, 16. That is no easy task here. Alao's filings are hard to follow and often provide too little information for the Court to assess how specific allegations fit with her claims. *See, e.g.*, ECF No. 8 ("Am. Compl.") at 7 (asserting that "[o]n July 22, 2014, [Alao] submitted 'Assignment Despite Objection,'" but not identifying the assignment or the objection). The Court will do its best. With that caveat, the Court gleans the following factual allegations from her filings.

Alao began working for the D.C. Department of Health as a nurse specialist in 1998. Am. Compl. at 6; ECF No. 9-2 at 2. She claims that in July 2013 she sent a letter describing "the history of harassment, discrimination, unfair treatment, and hostile working conditions" that her supervisor—Dr. Sharon Lewis—had subjected her to for several years. Am. Compl. at 6. This alleged conduct seems to have started in 2010, when Alao "was denied the office space" that Dr. Lewis had said would "be allocated based on seniority." ECF No. 14 at 19. But Alao's hospitalization in July 2011 for "Subarachnoid hemorrhage" appears to be the catalyst for most of the complained-of conduct. Am. Compl. at 6. In February 2012, Alao—who had returned to work the month before—asked for an "Alternative Work Schedule/Flexible schedule" because of her disability. *Id.* She did the same a year later, but Dr. Lewis eventually denied her request in 2015 for "insufficient coverage." *Id.*; ECF No. 14 at 7. Alao also requested an ergonomic chair and footstool,

which Dr. Lewis denied too.  Am. Compl. at 6.  And she asked for accommodations like "a change in tour of duty" and an earlier start to the workday so that she could schedule medical appointments during the day.  *Id.*  Dr. Lewis, despite allegedly permitting others to "modify their tour of duty as needed," denied those requests.  *Id.*

Alao says that Dr. Lewis not only failed to accommodate her disability, but also discriminated and retaliated against her for four reasons: her race, national origin, disability, and because she sent a July 2013 letter "explain[ing] the history" of Dr. Lewis's "unfair treatment" and "discrimination."  Am. Compl. at 6.  A month after Alao sent that letter, Dr. Lewis purportedly changed the review process for Alao's reports.  *Id.* at 7.  Under the new system—unique to Alao, apparently—Alao's work had to "first be reported to" Dr. Lewis rather than to the "supervisor[] who gave the assignment."  *Id.*  Nor did Dr. Lewis stop there; she also denied Alao "opportunities for mandated trainings," withdrew approval for "onsite training hospice," and did not provide a copy of Alao's "2012 Physical [sic] year Performance Evaluation."  *Id.*

Sometime in 2013, Dr. Lewis "stated that she re-assigned" Alao to a new team to "meet [her] medical needs."  Am. Compl. at 7.  But that reassignment, Alao says, "exacerbated" rather than helped her "health condition."  *Id.*  On her new "home health survey team," Alao had to travel between homes, requiring her to use "stairs without hand rails" and traverse "snow covered sidewalks" that caused her to fall several times.  *Id.*; ECF No. 14 at 17.  But her previous work on the "Long Term Care Survey Team," *see* Am. Compl. at 7, "was concentrated in one facility equipped with elevators," ECF No. 14 at 13.  This reassignment was allegedly an effort to meet a "requirement for a certified home health agency surveyor"—a need that arose because the "newly hired team leader . . .was uncertified."  Am. Compl. at 7.

Alao eventually met with Dr. Lewis and senior management to discuss the "concerns" she had raised in her letter. Am. Compl. at 7–8. Dr. Lewis halted the first meeting, allegedly because Alao brought "a peer/union member." *Id.* at 8. At the next meeting, the Department of Health's "management liaison[] promised to have the EEOC office contact" Alao. *Id.* That contact, Alao claims, did not happen "for months." *Id.* After it did, the EEOC officer apparently "took six months to close her investigation." *Id.* But Alao also alleges that the officer said she "was unable to conduct her investigation [and] was afraid of being charged of harassing staff to testify." *Id.*

Alao then filed a charge of discrimination with the D.C. Office of Human Rights and EEOC in August 2014.[1] ECF No. 9-1 at 2–3. She asserted discrimination based on race, retaliation, disability, and national origin. Specifically, Alao claimed that the Department had denied her reasonable accommodations for her disability, both by refusing to adjust her schedule and by failing to provide the requested ergonomic chair and footstool. *Id.* at 2. On top of that, Alao highlighted that her employer had denied her training opportunities, adjusted the system for reviewing her work, and re-assigned Alao to a new team. *Id.* at 2–3. This discrimination charge appears to have gone through years of administrative proceedings before the EEOC dismissed it in December 2023. *See* Am. Compl. at 10. In that dismissal, the EEOC gave Alao notice of her "right to sue." *Id.*

Alao's "protected activity" under anti-discrimination law allegedly prompted Dr. Lewis to "terminate[]" her "employment." Am. Compl. at 8. So Alao filed another charge of discrimination, this one in December 2016. *See* ECF No. 9-2 at 2. According to that charge, the Department "terminated" her employment in July of that year because Alao had filed the 2014 discrimination

[1] Alao signed the charge of discrimination on August 2, 2014, but had it notarized on September 2 of that year. *See* ECF No. 9-3. The District uses August 2 as the operative date, *see* ECF No. 9 at 10, and the Court follows suit.

charge and was disabled. *Id.* But the Office of Human Rights dismissed the 2016 complaint in February 2018. *See* ECF No. 9-3 at 2–3. In that dismissal, the Office noted that Alao had "submitted a written request to withdraw the complaint." *Id.* at 2. It also explained that Alao could "file a private cause of action in the D.C Superior Court." *Id.* at 3. But if her case had "already been cross-filed with the EEOC," then Alao "may wish" to "request a right to sue letter." *Id.* Alao claims that she did not "personally" agree with "the withdrawal" of her discrimination charge and "consequently parted way[s] with the attorney." ECF No. 14 at 4. But she does not allege or argue that she ever received a right-to-sue letter for her 2016 discrimination complaint.

In March 2024, Alao sued three D.C. agencies: the Department of Health, the Office of Human Rights, and the Office of Attorney General. ECF No. 1. The Court ordered her to amend her complaint because a formatting issue rendered the first one incomplete or unreadable. *See* Minute Order of April 16, 2024. Alao, in her amended complaint, alleges that she was "denied reasonable accommodation" for her disability; that she endured changes to the "terms and conditions" of her employment because of her "race, disability, national origin, and retaliation"; that she was "demoted" because of "disability" and "retaliation"; and that she suffered "wrongful termination." Am. Compl. at 6.

The District of Columbia now moves to dismiss some of her claims. ECF No. 9.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when she pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's

favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). The Court "also considers additional facts set forth in the undisputed documents incorporated in the Complaint." *Greer v. Bd. Of Trs. of Univ. of D.C.*, No. 23-cv-2296 (JEB), 2024 WL 894934, at *1 (D.D.C. Mar. 1, 2024) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). Ultimately, however, "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "although a pro se complaint 'must be construed liberally, the complaint must still present a claim on which the Court can grant relief.'" *Untalasco v. Lockheed Martin Corp.*, 249 F. Supp. 3d 318, 322 (D.D.C. 2017) (quoting *Budik v. Dartmouth–Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013)).

## III. Analysis

The District focuses most of its argument on exhaustion, contending that Alao failed to exhaust many of the alleged discrete discriminatory and retaliatory acts.[2] That is true for some of her allegations. But the District devotes less time and effort to Alao's *claims* of discrimination

[2] The named agency defendants argue that the District of Columbia is the proper defendant. ECF No. 9 at 8. Unless a statute provides otherwise, "bodies within the District of Columbia government are not suable as separate entities"—in other words, they are "*non sui juris*." *Hunter v. D.C. Child & Fam. Servs. Agency*, 710 F. Supp. 2d 152, 157 (D.D.C. 2010) (citation omitted). That label describes all three agency defendants here. *See, e.g.*, *Nix El v. Williams*, 174 F. Supp. 3d 87, 93 (D.D.C. 2016) (D.C. Department of Health); *Ridley v. Dynamic Vision Home Health Servs.*, 68 F. Supp. 3d 74, 77 (D.D.C. 2014) (D.C. Office of Human Rights); *Penn v. District of Columbia*, No. 22-cv-745 (CKK), 2023 WL 143338, at *3 (D.D.C. Jan. 10, 2023) (D.C. Office of the Attorney General). Alao does not engage with this settled rule, asserting only that "Defendants are playing around" by arguing this point. *See* ECF No. 16 at 7. But dismissing the named agency defendants and "substitut[ing] the District as a defendant" is appropriate when, as here, "a plaintiff erroneously names" D.C. "agenc[ies]" as defendants. *Sampson v. D.C. Dep't of Corr.*, 20 F. Supp. 3d 282, 285 (D.D.C. 2014) (citation omitted). So the Court will do just that: dismiss the named agency defendants and substitute the District as the proper defendant.

and retaliation, and while those claims cannot rest on unexhausted allegations of discrete acts, they do not all falter at the motion-to-dismiss stage. As explained below, Alao has plausibly alleged discrimination under the ADA and retaliation under both that statute and Title VII. Her claims for racial and national-origin discrimination, however, fall short because she has not plausibly alleged facts supporting an inference of discrimination on those grounds.

### A. Alao Failed to Exhaust Several Allegations of Discrimination and Retaliation

The Court begins by clarifying the alleged discriminatory and retaliatory acts that Alao has exhausted and, in turn, that can support her claims.[3] Suing under Title VII and the ADA, Alao must satisfy "two statutory prerequisites." *Jones v. District of Columbia*, 273 F. Supp. 2d 61, 64 (D.D.C. 2003) (Title VII); *see also Dahlman v. Am. Ass'n of Retired Persons*, 791 F. Supp. 2d 68, 74–75 (D.D.C. 2011) (ADA). First, she must have "timely file[d] a charge with the EEOC or a state agency." *Jones*, 273 F. Supp. 2d at 64. And second, she must have received from the EEOC "a 'right to sue' letter." *Id.* Together, these exhaustion rules "serve[] the dual purpose" of providing "notice to the employer and an opportunity to settle the dispute." *Dahlman*, 791 F. Supp. 2d at 75.

The timing rules for the first requirement contain two nuances. The first turns on whether "the EEOC has a work-sharing agreement with the state or local fair-employment practices (FEP) agency." *Greer*, 2024 WL 894934, at *3 (citing *Carter v. George Wash. Univ.*, 387 F.3d 872, 879

[3] The Court's exhaustion analysis addresses whether the "discrete discriminatory" and retaliatory "acts are . . . actionable." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). But a failure to exhaust a claim premised on a discrete act does not necessarily mean that an employee cannot use "the prior act[] as background evidence in support of a timely claim." *Id.*; *see also, e.g.*, *Segal v. Harris Teeter Supermarkets, Inc.*, No. 15-cv-1496 (BAH), 2016 WL 7223273, at *6 (D.D.C. Dec. 13, 2016) ("Nevertheless, under *Morgan*, prior acts that could not on their own support a timely claim may be used as background evidence in support of a timely claim." (internal quotation marks and citation omitted)).

(D.C. Cir. 2004)).  Because the EEOC has such an arrangement with the District, Alao had "300 days"—rather than 180—from the date of the alleged unlawful employment practice to file her charge.  *Id.*; *see also Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2016).  And second, "[f]or purposes of assessing" compliance with that limitations period, "the Supreme Court has identified two categories of discrimination claims."  *Achagzai v. Broad. Bd. of Govs.*, 170 F. Supp. 3d 164, 175 (D.D.C. 2016).  The timeliness of a claim that an employee "was the victim of a 'discrete retaliatory or discriminatory act'" turns on that "particular act."  *Id.* (citation omitted).  Those discrete acts "are not actionable if time barred, even when they are related to acts alleged in [a] timely manner in the administrative process."  *Id.* (internal quotation marks and citation omitted).  Put another way, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act"—here, 300 days from the day that "act occurred."  *Greer*, 2024 WL 894934, at *3 (citation omitted).  On the other hand, "a different rule" applies to claims alleging a hostile work environment.  *Achagzai*, 170 F. Supp. 3d at 175.  So long as "*an* act contributing to the claim occurs within the filing period," the Court may "consider[]" the "entire time period of the hostile environment" for assessing "liability."  *Id.* at 175–76 (citation omitted).

The District tries to trim Alao's allegations with three exhaustion arguments.  The first two center on her first discrimination complaint, which she filed on August 2, 2014.  ECF No. 9-1 at 3.  For this charge to support liability premised on a discrete discriminatory or retaliatory act, then, the act must have occurred no earlier than October 6, 2013.  Thus, the District contends that the following alleged acts are non-actionable: (1) the denials of Alao's February 2012 and February 2013 requests for an alternative work schedule; (2) the denial of her June 2013 request for a different "tour of duty"; (3) the adjustment of her review process in August 2013; and (4) the denial of her request for a copy of her 2012 performance evaluation.  ECF No. 9 at 10.

For most of these acts, though, the District conflates Alao's *request* with the *denial* of that request—*i.e.*, the allegedly unlawful act. The District seems to assume, for example, that Dr. Lewis denied the February 2012 and February 2013 requests for alternative work schedules when Alao made them.[4] Maybe. But Alao does not allege that; instead, she says only that Dr. Lewis "denied my request." Am. Compl. at 6. So too for the refusal to provide a copy of the 2012 performance evaluation. That was a "[d]enied request[]," but not necessarily in 2012—or any other time before October 6, 2013. *Id.* at 7. The District offers no reason to think that these discrete acts happened outside the limitations period, so it has not—at least at the motion-to-dismiss stage—met its "burden" of establishing the "affirmative defense" of "[a]dministrative exhaustion under Title VII" or "the ADA" as to these acts. *Carty v. District of Columbia*, 699 F. Supp. 2d 1, 2 (D.D.C. 2010). That said, Alao does allege that Dr. Lewis revised her review process *in* "August 2013." Am. Compl. at 7. So clearly, that discrete act cannot provide a basis for her claims.

Next, the District contends that Alao failed to include several alleged acts in the 2014 charge, so they cannot support liability regardless of when they happened. "[D]iscrete incidents of discrimination" and "retaliation must be separately charged and exhausted within the appropriate limitations period." *Ferguson v. WMATA*, 630 F. Supp. 3d 96, 117 (D.D.C. 2022) (internal quotation marks and citation omitted). In other words, Alao's lawsuit is "limited in scope to claims that are like or reasonably related to the allegations in the administrative charge." *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 59 (D.D.C. 2009) (internal quotation marks and citation omitted). So, for example, an EEOC charge that describes an allegedly discriminatory performance-review

[4] In her opposition, Alao says that Dr. Lewis denied these requests in 2015. ECF No. 14 at 7. That seems hard to square with her inclusion of the denial in her August 2014 discrimination charge. With that uncertainty, and at the motion-to-dismiss stage, the Court will not find these allegations off limits for Alao.

process exhausts a claim premised on that review process. *Crawford v. Duke*, 867 F.3d 103, 109–10 (D.C. Cir. 2017). But if the same charge makes only a "fleeting and skeletal reference to temporary interference with the promotion process," then the employee has not exhausted a discrimination claim based on a denied promotion. *Id.* at 110–11. According to the District, eight alleged acts are unexhausted for this reason: (1) the District's failure to give Alao "documentation of the investigation of her transport" to the hospital; (2) its provision of a "late directive" to attend a training that caused Alao to miss the session; (3) Alao's 2014 "Assignment Despite Objection"; (4) the District's withdrawal of approval for "onsite training hospice"; (5) its causing Alao to endure injuries in her re-assigned position and "ridicule by Dr. Lewis"; (6) Dr. Lewis's imposition of ridicule and humiliation on Alao "for 'a scary report of running red by a home health agency staff'"; (7) the District's requirement that Alao climb stairs in her re-assigned role; and (8) its reassignment of Alao from the "Long Care Team." ECF No. 9 at 10–11.

The District is mostly right but sometimes reads the 2014 discrimination charge too narrowly. That charge focuses on how Alao did not receive requested scheduling or equipment accommodations (like an ergonomic chair and footstool), was denied training opportunities and her preferred office space, had her review process altered, and was reassigned to a new team. *See* ECF No. 9-1 at 2–3. But Alao's allegations did not mention several discrete acts that she raises in her complaint: failing to provide documentation of the investigation of her transport to the hospital; the unclear "Assignment Despite Objection"; and the also hard-to-understand claim that she endured ridicule for "a scary report of running red by a home health agency staff." ECF No. 9 at 10–11. Because the 2014 complaint does not discuss these acts, they do not "arise from the administrative investigation that" could have "reasonably" been "expected to follow the charge of discrimination." *Williams v. Spencer*, 883 F. Supp. 2d 165, 173 (D.D.C. 2012) (citation omitted). So they

are unexhausted and cannot support liability as discrete acts. The charge does, however, allege that Alao's employer "denied [her] requested opportunities for mandated trainings" and "re-assigned [her] from [her] original team" under "the pretense of meeting [her] medical needs." ECF No. 9-1 at 2–3. Her claims premised on training problems or the reassignment are thus "like or reasonably related" to what she alleged in her "administrative complaint," so she can "pursue[]" them. *Williams*, 883 F. Supp. 2d at 173 (citation omitted).

Finally, the District argues that Alao never received a right-to-sue letter for her second charge of discrimination and so did not exhaust her claims that retaliation and discrimination caused her termination. *See* ECF No. 9 at 11–12; ECF No. 9-2 at 2. Alao does not allege that she ever received the required letter. Nor did she attach such a letter despite doing so for her 2014 charge. *See* Am. Compl. at 10. And in her opposition, Alao appears to acknowledge that she never received the letter; she claims that she did not know her counsel withdrew that complaint and was "personally not in agreement" with that decision. ECF No. 14 at 4–5. But that disagreement does not remove this exhaustion requirement, and Alao "has not alleged"—either in her amended complaint, opposition, or supplemental memorandum—that she "ever obtained a valid right to sue letter from the EEOC." *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 124 (D.D.C. 2009). Further, the District's Office of Human Rights said in its letter dismissing Alao's case because of the "request to withdraw" that she "may wish to contact the EEOC or *to request a right to sue letter*." ECF No. 9-3 at 2–3 (emphasis added). The District has not waived the right-to-sue-letter requirement, and Alao offers no good reason to excuse her failure to exhaust the termination-based claims. So they cannot support liability under Title VII or the ADA.[5]

[5] Alao says that she knew about the "withdrawal of the case" but "was not in receipt of any letter advising such" until the District attached it to the motion to dismiss. ECF No. 14 at 4. But

To repeat, none of the above analysis resolves which, if any, of Alao's claims should be dismissed for failure to state a claim. But it does distinguish the discrete discriminatory and retaliatory acts that are actionable from those that are only potentially relevant as background evidence in support of a timely claim. *Morgan*, 536 U.S. at 113.

**B. Alao Plausibly Alleges Discrimination and Retaliation Under the ADA**

The ADA prohibits "employers from discriminating against qualified employees on the basis of their disability." *Dahlman*, 791 F. Supp. 2d at 74. The statute also requires, among other things, that employers provide "reasonable accommodations" for disabled employees unless "the accommodation would impose an undue hardship" on the business. 42 U.S.C. § 12112(b)(5)(A). Courts recognize "[f]our types of disability discrimination" under the ADA: (1) "intentional discrimination"—*i.e.*, "disparate treatment"; (2) "disparate impact"; (3) "hostile work environment"; and (4) "failure to accommodate." *Johnson v. Joseph J. Magnolia, Inc.*, No. 21-cv-772 (BAH), 2021 WL 5331708, at *4 n.2 (D.D.C. Nov. 16, 2021). But in the end, the "two basic elements of a disability discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's disability." *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020). Further, a plaintiff may pursue an ADA claim for retaliation, *see* 42 U.S.C. § 12203(a), by alleging that an employer "took materially adverse action against her because she participated in protected activity," *Austin v. Am. Inst. for Rsch.*, 75 F. Supp. 3d 247, 255 (D.D.C. 2014) (cleaned up) (citation omitted).

---

Alao had an independent obligation to exhaust her claims by obtaining a right-to-sue letter regardless of the Office of Human Rights letter stating that "Complainant has submitted a written request to withdraw the complaint." ECF No. 9-3 at 2. Nothing about this circumstance suggests that her failure to exhaust should be excused.

The District moves to dismiss only some of Alao's ADA claims.[6]  Challenging Alao's ADA discrimination claim,[7] the District first contends that Alao "fails to allege that she suffered from a qualifying adverse employment action."  ECF No. 9 at 14.  To clear that hurdle, the District argues, Alao had to allege that she experienced a "*significant change in employment status*, such as . . . reassignment with significantly different responsibilities." *Id.* at 12–13 (quoting *Ingram v. D.C. Child & Fam. Servs. Agency*, 394 F. Supp. 3d 119, 127 (D.D.C. 2019)).  But the bar is not that high.  In the Title VII context, the Supreme Court recently explained that the statute does not require a plaintiff to show "that the harm incurred was 'significant'"—or "serious, or substantial, or any similar adjective." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).  Instead, a Title VII plaintiff must show only that the challenged act "brought about some 'disadvantageous'

---

[6] The District does not, for example, seek to dismiss Alao's "failure-to-accommodate claim" based on the requested "ergonomic chair and footstool."  ECF No. 15 at 8 n.4.  Nor does the District expressly argue that her retaliation claim under the ADA fails.  Alao's amended complaint, though far from a model of clarity, asserts that she endured "retaliation" based on her "disability."  Am. Compl. at 6–7.  True, the most obvious allegation of retaliation—her 2016 termination—relies on an unexhausted discrete act and cannot support liability.  But Alao also alleges that Dr. Lewis "denied [her] request for Hospice training," purportedly because of Alao's "health condition." *Id.* at 7.  And she claims that in 2013 Dr. Lewis reassigned her to a team that "exacerbated" rather than accommodated her "health condition." *Id.*  Both those alleged acts plausibly happened after Alao sent her July 2013 letter explaining the discrimination that she claims she endured.  And although Alao does not clearly connect these acts to retaliatory animus, she suggests that her employer's health-based reasons for the acts were not legitimate.  With no argument from the District that Alao has not stated an ADA retaliation claim, the Court will not dismiss that claim at the pleading stage—particularly because Alao's "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

[7] In some ways, "discrimination claim" is a misnomer here.  Although the District distinguishes between Alao's claim for "disability discrimination under the ADA" and her "separate failure-to-accommodate claim," ECF No. 9 at 3; ECF No. 15 at 8 n.4, those are just different "forms" that a "disability discrimination claim can take," *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 308 (D.D.C. 2015).  Presumably the District means "intentional discrimination, otherwise known as disparate treatment," when it parses out Alao's "disability discrimination" claim. *Id.*  But the Court will track the District's terminology for ease of reference.

change in an employment term or condition." *Id.* at 354. And because the relevant statutory language is "virtually identical," *Muldrow* naturally extends to ADA claims "challenging discrimination affecting the 'terms or conditions' of employment." *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112 n.4 (1st Cir. 2024); *see also, e.g.*, *Ciotti v. City of New York*, No. 23-cv-10279 (ER), 2025 WL 308022, at *12 (S.D.N.Y. Jan. 27, 2025) ("Courts have also held that *Muldrow* applies to discrimination claims under the ADA[.]"); *Qashu v. Blinken*, No. 22-cv-1077 (TNM), 2024 WL 3521592, at *5–7 & n.6 (D.D.C. July 24, 2024).

The thrust of Alao's ADA discrimination claim does just that by alleging that her reassignment changed her employment conditions and made her worse off, so she has plausibly alleged the required adverse action. Alao says that reassigning her "exacerbated" her "health condition" in several ways. For example, her new role required her to navigate "stairs without hand rails" and "travel from home-to-home," even in treacherous weather conditions. Am. Compl. at 7. "[O]ften," Alao alleges, she has "fall[en] on snow covered sidewalks" while working on her new team. *Id.* So she has alleged that her reassignment caused her "some injury respecting her employment terms or conditions." *Muldrow*, 601 U.S. at 359. And that is all the ADA requires.[8]

Switching gears, the District raises another point in reply. Alao, the District says, "acknowledges that her reassignment was to meet" a requirement about having "a certified home health agency surveyor as the newly hired team leader," so *that* was the reason—not her

[8] The District also argues that several other allegations do not clear this heightened standard—which, to reiterate, does not apply. *See* ECF No. 9 at 13 (discussing requests for alternative work schedules, denial of preferred office space and trainings, and other allegations). But as explained, Alao has stated a claim for disability discrimination based on the reassignment alone because she has plausibly alleged that she suffered "some injury respecting her employment terms or conditions." *Muldrow*, 601 U.S. at 359. Her exhaustion problems knock out some of her allegations that might otherwise be actionable. But the Court sees no need at this stage to further parse the remaining allegations. It suffices to say that she has stated an ADA discrimination claim.

disability—for the reassignment.  ECF No. 15 at 8.  But the District overreads Alao's allegations, which do not "concede[]" a "legitimate, non-discriminatory reason for the" reassignment.  *Id.* True, those allegations are inartful, and Alao does suggest that a Centers for Medicare and Medicaid Services requirement played a role in her "removal" from the "Long Term Care Team."  Am. Compl. at 7.  But the reason for her *removal from* that team might differ from the reason for her *reassignment to* a different team.  Indeed, Alao also claims that Dr. Lewis cited Alao's "medical needs" as the basis for the reassignment.  *Id.*  That reason was allegedly flawed; the reassignment worsened rather than improved her "health condition."  *Id.*  In her opposition, moreover, Alao seems to separate the CMS requirements from Dr. Lewis's decision to reassign Alao based on medical needs.  *See* ECF No. 14 at 14–16.

Although a close call, the Court will not dismiss Alao's disability-discrimination claim on this basis.  "[A]n employment discrimination plaintiff need not anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action . . . to survive a motion to dismiss."  *Easaw v. Newport*, 253 F. Supp. 3d 22, 26–27 (D.D.C. 2017).  Nor must she "allege pretext," *id.* at 27, or even "every fact necessary to establish a *prima facie* case," *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011).  This case differs in some ways because Alao herself might have offered a reason unrelated to her disability that contributed to the reassignment.  But as explained, neither Alao's amended complaint nor her briefing "concedes" a "legitimate, non-discriminatory reason" for the reassignment.  ECF No. 15 at 8.  Alao instead claims that Dr. Lewis purportedly "re-assigned" her to satisfy her "medical needs" but that this reassignment made her condition worse.  Am. Compl. at 7.  That is, to be sure, a "somewhat thin" allegation of discriminatory purpose.  *Floyd v. Lee*, 968 F. Supp. 2d 308, 329 (D.D.C. 2013).  But Alao plausibly suggests that Dr. Lewis decided to reassign her "because of" her "disability";

she cited Alao's medical condition as a reason for the reassignment and then, according to Alao, put Alao in a role that made the condition worse. *See Waggel*, 957 F.3d at 1373. And "mindful of its obligation to liberally construe the filings of a *pro se* plaintiff," the Court finds that Alao's allegations nudge her reassignment-based claim of disability discrimination across the line, so it "will not dismiss" that claim "at this point." *Floyd*, 968 F. Supp. 2d at 329.

In sum, Alao plausibly alleges disability discrimination—both for failure to accommodate and for disadvantageously changing her employment terms and conditions—and retaliation under the ADA.

### C.    Alao Plausibly Alleges Retaliation for Her Protected Title VII Activity but Fails to Plausibly Allege Race or National Origin Discrimination Under Title VII

"Title VII makes it unlawful for an employer . . . 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race . . . or national origin.'" *Muldrow*, 601 U.S. at 354 (quoting 42 U.S.C. § 2000e-2(a)(1)). To survive a motion to dismiss a Title VII discrimination claim, a plaintiff must plead that "she is part of a protected class under Title VII," that "she suffered a cognizable adverse employment action, and" that "the action gives rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). "[A]llegations of either direct or indirect discrimination" can satisfy the third prong. *Thomas v. WMATA*, 305 F. Supp. 3d 77, 85 (D.D.C. 2018). And on top of its antidiscrimination provision, Title VII also prohibits employers from retaliating against an employee because the employee "opposed, complained of, or sought remedies for, unlawful workplace discrimination." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013); *see also* 42 U.S.C. § 2000e-3(a).

Alao alleges discrimination based on her race and national origin, as well as retaliation for engaging in protected activity under Title VII. *See* Am. Compl. at 4, 6–8; *see also* ECF No. 9 at

3 (construing Alao's amended complaint as asserting these claims). The District seeks dismissal only of her claims for national-origin and racial discrimination, and only on one ground: that she failed to allege facts creating a plausible inference of discrimination.[9] ECF No. 9. at 14. The amended complaint, the District says, offers nothing but unadorned legal conclusions like "I have been discriminated against . . . based on my Race" and "National Origin." Am. Compl. at 6. That assessment is fair. Alao's burden is "not onerous" at the motion-to-dismiss stage, but it requires more than the "threadbare" and "conclusory allegations of discrimination" that she offers in her amended complaint. *Montgomery v. Mayorkas*, Nos. 23-cv-3931, 24-cv-1697 (BAH), 2024 WL 4973406, at *7 (D.D.C. Dec. 4, 2024) (citation omitted).

Perhaps recognizing that shortcoming, Alao tries to bolster her Title VII discrimination claims in her briefing. She says that she was the "only native born African-Nigerian American under" Dr. Lewis's "supervision." ECF No. 14 at 3. While another employee received preferred office space because of her seniority in 2013, Alao did not when she requested office space as the most senior person in 2010. *Id.* at 19. And she lists several employees who, unlike Alao, received "variations to their schedule[s]" to accommodate things like a "long-distance commute" and "new-born" child. *Id.* at 19–20. Alao also references an "African-born" employee who "left" before

[9] As with Alao's claim for ADA retaliation, the District does not directly challenge her Title VII retaliation claim. Instead, the District just points to various allegations—such as Alao's termination—that it says are unexhausted. *See* ECF No. 9 at 9–12. But the District never argues that the *exhausted* allegations fail to support a retaliation claim under Title VII. As explained, some of those exhausted allegations plausibly refer to employment actions that happened after the July 2013 letter that "opposed" and "complained of" discrimination and unfair treatment that Alao alleges she experienced. *Nassar*, 570 U.S. at 342; *see also* Am. Compl. at 6. And the District has not contended, for example, that Alao did not "reasonably and in good faith *believe*[]" that she had endured "unlawful" discrimination under Title VII when she detailed in July 2013 the unfair, discriminatory, and harassing treatment that she had allegedly endured. *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

Alao began working under Dr. Lewis because that employee had endured "discriminatory harassment" from an unidentified "peer." *Id.* at 21. Finally, she contends that Dr. Lewis had "personal animosity towards Nigerian American[s]" because Dr. Lewis complained loudly once about an "undocumented/visiting Nigerian" who "hit her car." *Id.*[10] Although the Court recognizes that it must consider Alao's allegations "in light of" her other filings, *Brown*, 789 F.3d at 152, these brand-new allegations stretch—and possibly exceed—the bounds of that special solicitude for pro se plaintiffs. *See Whiting v. Merrill Lynch & Co.*, No. 23-cv-641 (RDM), 2024 WL 243475, at *2 (D.D.C. Jan. 23, 2024) ("[A] party—including a party proceeding *pro se*—may not amend a pleading through an opposition brief.").

In any event, Alao's opposition-brief allegations do not plausibly support an inference that she suffered an "adverse employment action[] . . . because of [her] national origin" or race. *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015). She claims that other employees received better treatment—specifically, flexible work schedules.[11] But to support a

[10] Alao also asserts in her opposition that "Sharon Mills expressed disdain for all immigrants" when Mills "expressed anger" that she was "once patted down at the airport while the immigrants around her did not have problem [sic] going through." ECF No. 14 at 21–22. But Alao's complaint says that Mills "resigned in the summer of 2011"—before most of the complained-of acts happened. Am. Compl. at 6. And Alao does not connect Mills to the discrimination that she allegedly endured.

[11] Although it is hard to tell, Alao may also suggest that the senior employee who received preferred office space in 2013 is a comparator employee supporting an inference of discrimination. The problem is that even if Alao and the senior employee were comparable—a big "if" given that Alao offers nothing about this employee other than her name—that could at most support an inference that Alao suffered discrimination in "2010" when she "was denied office space" despite being the "most senior staff that requested" it. ECF No. 14 at 19. But that discrete act happened far outside the 300-day limitations period that, as explained, excludes acts from before October 6, 2013. In any event, this alleged differential treatment would not support an inference of discrimination. One employee (whom the Court knows little about) receiving her preferred office space *three years* after Alao's unsuccessful request does not suggest that racial or national-origin discrimination caused an adverse employment action.

discrimination claim this way, Alao must "plead sufficient facts to raise a plausible inference that *all of the relevant aspects* of [her] employment situation were *nearly identical* to those of the other employees who did not suffer similar adverse employment actions." *Jones v. Ass'n of Am. Med. Colls.*, No. 22-cv-1680 (EGS), 2023 WL 2327901, at *11 (D.D.C. Mar. 2, 2023) (emphases added) (citation omitted). On this front, Alao offers nothing. Instead, she rattles off the names of five employees with no "factual allegations describing . . . how they were similarly situated"—nothing "about their job titles, experiences, levels of seniority, . . . their exact races," *id.*, their "responsibilities compared to hers," or whether they "reported to the same supervisors," *Yuvienco v. Vilsack*, No. 23-cv-186 (RC), 2024 WL 727712, at *4 (D.D.C. Feb. 22, 2024). Alao also never says *what* flexibility those employees received—that is, whether they obtained an adjustment like the one she sought. To the contrary, Alao's only details show how *different* those employees' situations were. While Alao sought scheduling adjustments for medical appointments, the other employees apparently obtained them for different reasons—for example, to accommodate childcare, a pregnancy, or a long commute. ECF No. 14 at 19. These potential comparators do not come close to supporting an inference of discrimination.

Alao's purported examples of anti-Nigerian animus in the workplace don't get these claims over the hump either. That bias was on display, Alao says, when Dr. Lewis talked about a Nigerian immigrant who hit her car. ECF No. 14 at 19. But *one* complaint about *one* Nigerian immigrant involved in a car accident does not support the inference that Dr. Lewis had "personal animosity" towards Nigerian immigrants generally. *Id.* And even if this incident suggested some anti-Nigerian bias, Alao does not "connect[]" any "purported discriminatory actions" to her national origin or race. *Montgomery*, 2024 WL 4973406, at *7. Alao does not even say *when* this incident happened, further undermining any connection between this alleged display of animus and an adverse

action. Her claims about the former Nigerian employee suffer from similar problems; unspecified discrimination and harassment against a different employee by an unspecified "peer" do not support "an inference that" *Alao's* "employer took" an "adverse employment action" against *her* "because of her membership in [a] protected class." *Arias v. Marriot Int'l, Inc.*, 217 F. Supp. 3d 189, 194 (D.D.C. 2016) (citation omitted) (brackets omitted). So these belated allegations do not save Alao's Title VII discrimination claims from dismissal.[12]

## IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendants' Partial Motion to Dismiss the Amended Complaint, ECF No. 9, is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's claims for racial and national-origin discrimination under Title VII, and it is **DENIED** with respect to all other claims.

It is further **ORDERED** that the District of Columbia Government Department of Health, District of Columbia Government Office of Human Rights, and District of Columbia Government Office of Attorney General, are **DISMISSED** as defendants in this matter, and the District of

[12] In her opposition brief, Alao argues that Dr. Lewis "creat[ed] a hostile work environment." ECF No. 14 at 18. She did not allege that claim in her amended complaint, which mentions "hostile working conditions" once in the "background" but then focuses on discrete acts allegedly supporting claims for retaliation and discrimination based on disability, race, and national origin. *See* Am. Compl. at 6–8. Again, there is a limit to the Court's leniency for pro se plaintiffs, and permitting Alao to interject new claims through briefing—rather than the proper process for amending pleadings under Rule 15—transgresses it. But her opposition-brief claim would fail anyway because Alao just "parrot[s] the legal standard" with "bald legal conclusions" about a "persistent pattern of severe and pervasive harassment" and frequent "humiliat[ion] by supervisors." *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 91 (D.D.C. 2014) (internal quotation marks and citation omitted). Nor has Alao come close to offering "factual allegations" showing that the "discrete acts of discrimination" that she complains about "were part of a severe and pervasive pattern of harassment." *Id.* at 92 (dismissing hostile-work-environment claim where plaintiff "made no factual allegations from which such a pattern may be inferred" but rather sought to "bootstrap his alleged discrete acts of discrimination . . . into a broader hostile work environment claim" (internal quotation marks and citation omitted)).

Columbia is substituted in their place as the proper defendant.

      **SO ORDERED.**

                                             /s/ Timothy J. Kelly
                                           TIMOTHY J. KELLY
                                           United States District Judge

Date: March 21, 2025